## WATSON, PRESTON & CO. v. GREENWOOD & CO.

(Circuit Court, E. D. Pennsylvania. October 8, 1908.)

### No. 42.

SALES—REMEDIES OF SELLER—ACTION FOR BREACH OF CONTRACT—NECESSITY OF TENDER OF PERFORMANCE.

Plaintiffs contracted to sell to defendants certain stocks and bonds, to be delivered at the office of a trust company in Chicago on a date named. Prior to the date named the securities were assembled in a bank 300 miles from Chicago, and were to be forwarded by the bank to the trust company on notice from plaintiffs by telegraph or telephone. Three days before the date for delivery plaintiffs were notified by an agent of defendants that the latter would be unable to receive and pay for the securities on that date. *Held*, that under such circumstances, and on a finding by the jury that plaintiffs were ready and able to make delivery, they were not required to have the securities brought to Chicago for the purpose of making a tender, in order to entitle them to maintain an action for breach of the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1087.]

At Law. Sur motion for new trial and for judgment non obstante veredicto.

E. J. Pershing and George E. Nichols, for plaintiff.
George Wharton Pepper, for defendant Maury.
Joseph De F. Junkin, for defendant Greenwood.

HOLLAND, District Judge. The plaintiffs, Chicago bankers, sued the defendants, as partners, in Philadelphia, for damages for breach of contract made by the defendants to purchase from the plaintiffs certain stocks and bonds of a gas and electric light company in Illinois. The contract was in writing, dated July 7, 1906, the important clause of which is the following:

"On or before the 1st of August, 1906, the party of the second part [defendants] hereby agrees to pay to the party of the first part the sum of two hundred and thirty-five thousand dollars ($235,000) in cash, place of deposit to be the American Trust & Savings Bank, of Chicago, Ill., where all securities are to be assembled and all clearances made in accordance with the terms of this contract."

It appeared at the trial that the owner of the stocks and bonds in question, in the spring of 1906, had entered into an agreement to sell the same to two men, named Horner and Daab, residents of Chicago, for $198,000, and the latter in turn made an agreement of sale for these securities with the plaintiffs to deliver them at the American Trust Company, of Chicago, on the 1st day of August for delivery to the defendants. No money, however, had passed, and the price that the plaintiffs were to pay Horner and Daab was $205,000. These securities were assembled at the bank in Belleville, Ill., some 300 miles distant from Chicago, and about seven hours by train. The securities were ready for delivery at any time, and arrangements had been made with the cashier of the Belleville bank to have the securities at Chicago upon a notice by telephone or telegraph from the plaintiffs. The evidence shows that the securities were assembled in the Belleville bank prior to August, 1906, and ready to be delivered to the American Trust Company, of Chicago, on that date, and the uncontradicted evidence of Watson shows that they were ready and willing to deliver them, in accordance with the contract, on the 1st day of August, and telegraphed the defendants to that effect, which telegram was received by the latter about 12 o'clock on that day; and the evidence of Watson further shows they were willing to deliver, and it tends to establish that they would have been able to have produced the securities at the place appointed in Chicago, after sending the telegram, if the defendants had desired their delivery.

We do not think in this case that the plaintiffs were required to do more than they had done, in view of the fact that on the 28th day of July, before the date of delivery, a Mr. Schott, who was in New York, and who had authority to represent the defendants, wrote the plaintiffs:

"That the syndicate [meaning the defendants] would be unable to pay more than $25,000 in cash and to give notes for 60 or 90 days for the balance, secured by the property purchased, deposited in trust."

· The receipt of this information was sufficient to indicate that the defendants would not perform in accordance with the contract, and it excuses the plaintiffs from producing the bonds and stocks at the American Trust Company for the purpose of tendering to a party whom they knew would not be there to receive the tender in accordance with their agreement. The law does not require that to be done which manifestly would be a vain and idle ceremony. Hunt on Tender, § 236.

The question was submitted to the jury as to whether the plaintiffs were ready and able to perform, and they found that they were, and there was ample evidence to sustain such finding; but the defendants, after having failed in a negotiation to have the time extended, two days before notified the plaintiffs that they would be unable to perform, it would be inequitable to require the plaintiffs to incur additional trouble and expense, when they had been previously informed that the defendants could not perform their part of the contract. A similar situation was considered by the Supreme Court in the case of Hinckley v. Pittsburg Bessemer Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967, where the defendant agreed in writing to purchase for the plaintiff steel rails, to be rolled by the latter, "and to be drilled as may be directed." The defendant failed to give directions as to the drilling when requested, and notified the plaintiff they were unable to receive the delivery of the rails, and requested a delay in the making of them. The defendant did not manufacture any of the rails, but after the time had expired for delivery the plaintiff refused to accept them, and the defendant brought suit for damages. The Supreme Court held that the plaintiff was not bound to roll the rails and tender them to the defendant.

There are a number of reasons for a new trial, none of which, however, need be considered, as we do not think they were very seriously urged at the argument. The motion for judgment non obstante veredicto was urged upon the ground that the plaintiffs had not made a sufficient tender under the law. The whole question, we think, was properly submitted to the jury under the charge, and for the reasons stated the motions, both for a new trial and for judgment non obstante veredicto, are overruled, and judgment entered on the verdict.